Slip Op. 07-23

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                    :
NUFARM AMERICA'S, INC.,             :
                                    :
                    Plaintiff,      :
                                    :
                                    :
            v.                      :
                                    :   Before:          WALLACH, Judge
UNITED STATES,                      :   Consol. Court No.:   02-00162
                                    :
                    Defendant.      :
_____:


[Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Cross-Motion for
Summary Judgment is GRANTED.]

                                        Dated: February 15, 2007


Joel R. Junker & Associates (Joel R. Junker), for Plaintiff NuFarm America's, Inc.

Robert D. McCallum, Jr., Assistant Attorney General, Barbara S. Williams, Acting Attorney in
Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S.
Department of Justice; Beth C. Brotman, Office of Assistant Chief Counsel, International Trade
Litigation, U.S. Customs and Border Protection, for Defendant United States.

                               **OPINION**

**Wallach, Judge:**

                                    **I**
                              **INTRODUCTION**

    Plaintiff Nufarm America's, Inc. ("Nufarm") argues that the requirement to file a

consumption entry and to pay duty and related fees upon export to Canada on merchandise

imported temporarily under bond, pursuant to 9813.00.05, Harmonized Tariff Schedule of the

United States ("HTSUS") (2000), under 19 C.F.R. § 181.53, promulgated pursuant to the North American Free Trade Agreement ("NAFTA") Implementation Act in accordance with NAFTA Article 303, violates Article I, Section 9, Clause 5 of the United States Constitution ("the Export Clause"). This court has jurisdiction pursuant to 28 U.S.C. § 1581(a). Because the duties in question are related to the merchandise's importation and not its export, the statute remains within constitutional limitations and Plaintiff's Motion for Summary Judgment is denied. For these same reasons, Defendant's Cross-Motion for Summary Judgment is granted.

## II
## BACKGROUND

Nufarm imported chemical products into the United States under HTSUS subheading 9813.00.05 as articles to be processed into articles manufactured or produced in the United States; as a result the products were entered temporarily free of duty, and duties were deferred until the time of export.[1] Consolidated Complaint ("Complaint") ¶ 13; Answer to Consolidated Complaint ("Answer") ¶ 1, 13. The imported chemicals were subject to duty at the general ad valorem rates for chemicals falling under subheading 2918.90.20,[2] HTSUS, but payment of those

---

[1] "The Temporary Importation Under Bond [TIB] classification is a special program under the tariff schedule. The requirements of 19 C.F.R. § 181.53, among others, are permissible conditions placed upon the option to temporarily defer duty by importing goods under bond for specific enumerated purposes (see Subchapter XIII, Chapter 98, (HTSUS)). An importer at the time of entry may choose either to present the merchandise under a TIB provision and post a bond or make a consumption entry and pay the duty. HQ 228931 (August 9, 2001) (Further Review of Protest No. 3001-00-100227).

[2] HTSUS Subheading 2918.90.20 provides:

| 2918 | Carboxylic acids with additional oxygen function and their anhydrides, halides, peroxides, and peroxyacids; their halogenated, |

duties were deferred because the merchandise was entered under subheading 9813.00.05.[3] Defendant's Statement of Undisputed Facts ¶ 1. Once processed, the new product was then exported to Canada.[4] Complaint ¶ 15; Answer ¶ 15. Following the export to Canada, Plaintiff filed the required consumption entries and paid the full duty rate, applicable merchandise processing fees, and made an offer in compromise to the United States Customs Service ("Customs")[5] that resulted in the cancellation of liquidated damages. Defendant's Response to Plaintiff's Statement of Material Facts at 2; Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment ("Plaintiff's Response") at 15; letter from Joel R. Junker to the court, dated January 25, 2007, Docket No. 90. Plaintiff's consumption entries were liquidated, and it

---

sulfonated, nitrated, or nitrosated derivatives (con.):

 *       *       *

2918.90.20    Other………….9.3% 1/  Free (A, CA, E, IL, J, MX)

[3] HTSUS Subheading 9813.00.05 provides:

> Articles to be repaired, altered or processed (including processes which result in articles manufactured or produced in the United States)………Free (CA, IL, MX)

[4] There was no Canadian duty on the products at the time of export; as a result, Plaintiff paid the full U.S. duty rate on the entered values for the imported merchandise, at the general ad valorem duty rates applicable to goods classified under subheading 2918.90.20 during the years in which Nufarm's chemicals were imported. Complaint ¶¶ 15, 19; Defendant's Statement of Undisputed Facts ¶ 2.

[5] The United States Customs Service was renamed the Bureau of Customs and Border Protection of the Department of Homeland Security, effective March 1, 2003. See H.R. Doc. No. 108-32 (2003).

timely filed related protests based on the claim that assessment of duties under 19 C.F.R. § 181.53 violates the Export Clause.[6] Complaint ¶ 20; Answer ¶ 20.

Nufarm's protests on its entries at the Port of Seattle were denied on August 28, 2001, and its protests on the entries at the Port of Chicago were denied on March 27, 2002, after Customs' Further Review. Complaint ¶ 22; Answer ¶ 22. Customs concluded in its determination that the "[a]ssessment of duty per 19 C.F.R. § 181.53 was in accordance with law and regulations," was therefore constitutional, and denied Plaintiff's protest in full. Complaint ¶ 22 (quoting HQ 228931).

On March 13, 2003, the court consolidated Nufarm America's, Inc. v. United States, Court No. 02-00571 under Nufarm America's, Inc. v. United States, Court No. 02-00162. Motions under review in this opinion are Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment. Oral Argument was held on January 17, 2007.

## III
## STANDARD OF REVIEW

The standard of review when determining whether an agency's regulation violates the Constitution involves a presumption of constitutionality on behalf of the regulation. See Motor Vehicles Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 103 S. Ct. 2856, 77 L. Ed. 443 (1983) (finding that regulations enjoy a presumption of validity, albeit one

---

[6] Plaintiff filed the following protests related to its liquidated consumption entries: Port of Seattle Protests: Protest Nos. 3001-00-100227, 3001-00-100196, 3001-01-100049; Port of Chicago Protests: Protest Nos. 3901-01-100296, 3901-01-100979, 3901-01-101008, 3901-01-101135, 3901-01-101178, 3901-01-101043.

not as strong as that accorded to statutes promulgated by Congress). When looking at an

agency's interpretation of a statute by Congress,[7] a court is to give deference to the agency after

determining:

> whether Congress has directly spoken to the precise question at issue. If the intent
> of Congress is clear, that is the end of the matter . . . . If, however, the court
> determines Congress has not directly addressed the precise question at issue, the
> court does not simply impose its own construction on the statute . . . . Rather, if
> the statute is silent or ambiguous with respect to the specific issue, the question
> for the court is whether the agency's answer is based on a permissible construction
> of the statute.

Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-43, 104 S. Ct.

2778, 81 L. Ed. 2d 694 (1984). Customs regulations interpreting the tariff statute are entitled to

the heightened degree of Chevron deference. Haggar Apparel Co. v. United States, 526 U.S. 380,

392, 119 S. Ct. 1392, 143 L. Ed. 2d 480 (1999).

In determining the outcome of a motion for summary judgment, a court must look to

whether there remain any "genuine issues as to any material fact" in dispute on the matter.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509, 91 L. Ed. 2d 202,

211 (1986). The inquiry therefore is not into factual matters, but whether either party is entitled

to a judgment as a matter of law. Id. Under USCIT R. 56(c), summary judgment may be granted

when "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." USCIT R. 56(c).

---

[7] Plaintiff does not challenge the constitutionality of the related statutes in this action.

# IV
# DISCUSSION

Plaintiff argues that 19 C.F.R. § 181.53[8] is unconstitutional both on its face and in effect because it violates the Export Clause's prohibition on placing a tax or duty on items in the course of their export. Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") at 5. According to Nufarm, the regulation always operates unconstitutionally by its own terms because it provides for the assessment of duties at the time of export on merchandise that was previously imported. Id. at 5-6. Nufarm further argues that the regulation is unconstitutional in its operation, stating

---

[8] 19 C.F.R. § 181.53(a)(2) states, in pertinent part:

> Where a good is imported into the United States pursuant to a duty-deferral program and is subsequently withdrawn from the duty-deferral program for exportation to Canada or Mexico or is used as a material in the production of another good that is subsequently withdrawn from the duty-deferral program for exportation to Canada or Mexico, and provided that the good is a "good subject to NAFTA drawback" within the meaning of 19 U.S.C. 3333 and is not described in § 181.45 of this part, the documentation required to be filed under this section in connection with the exportation of the good shall, for purposes of this chapter, constitute an entry or withdrawal for consumption and the exported good shall be subject to duty which shall be assessed in accordance with paragraph (b) of this section.

19 C.F.R. § 181.53(a)(2)(i)(A). In addition, 19 C.F.R. § 181.53(b)(5) states:

> Temporary importation under bond . . . duty shall be assessed on the good on the basis of its condition at the time of its importation into the United States. Such duty shall be paid no later than 60 calendar days after either the date of exportation or the date of entry into a duty-deferral program of Canada or Mexico, except that, upon filing of a proper claim under paragraph (a)(3) of this section, the duty shall be waived or reduced in an amount that does not exceed the lesser of the total amount of duty payable on the good under this section or the total amount of customs duties paid to Canada or Mexico.

19 C.F.R. § 181.53(b)(5).

6

that the charge or exaction at issue is a duty that applies directly to exports. Id. at 8. Because Plaintiff interprets the policy and structure of 19 C.F.R. § 181.53 as requiring the assessment of duty as a result of the product's export to Canada or Mexico, Plaintiff concludes that the Constitution's prohibition on taxes and duties on exports from the United States is violated by the operation of the regulation. Id.

Defendant counters that 19 C.F.R. § 181.53 does not violate the Export Clause because the liability for the duty was imposed at the time of the product's importation into the United States; the payment of the duty was simply deferred until the goods were exported to another NAFTA country. Memorandum in Support of Defendant's Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Memo") at 2. The Government points to duty deferral provisions in U.S. Note 1(c), chapter 98, subchapter XIII, HTSUS, and in the subheading under which Nufarm's goods were entered (9813.00.05, HTSUS), as well as to NAFTA Article 303, which detail how duty deferral works and how previously imposed duties are calculated once deferral is no longer applicable.[9] Id. at 5-6. Defendant concludes that because the duties in question are to be imposed based on an event prior to exportation and are merely assessed at the time of exportation, the regulation is constitutional both on its face and in operation. Id. at 15.

---

[9] Deferred duties are waived upon export to non-NAFTA countries and imposed upon export to NAFTA countries, with reduction of duty possible in certain circumstances. U.S. Note 1(c), chapter 98, subchapter XIII, HTSUS.

**A**
**Plaintiff Bears the Burden of Overcoming the Presumption of Validity**

The Export Clause of the United States Constitution reads, "No Tax or Duty shall be laid on Articles exported from any State." U.S. Const. art. 1, § 9, cl. 5. This prohibition has been construed by the Supreme Court to "categorically bar[ ] Congress from imposing any tax on exports." United States v. U.S. Shoe Corp., 523 U.S. 360, 363, 118 S. Ct. 1290, 140 L. Ed. 2d 453 (1998) (citing United States v. Int'l Bus. Machines Corp. (IBM), 517 U.S. 843, 852, 116 S. Ct. 1793, 135 L. Ed. 2d 124 (1996)). Further, the Court has held that "a general tax, laid on all property alike, and not levied on goods in course of exportation, nor because of their intended exportation, is not within the constitutional prohibition." Turpin v. Burgess, 117 U.S. 504, 507, 6 S. Ct. 835, 29 L. Ed. 988 (1886).

In order for a regulation to be deemed unconstitutional, Plaintiff must overcome the basic presumption of validity. Thus, "the elementary rule is that every reasonable construction must be resorted to, in order to save a [statute] from unconstitutionality." Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575, 108 S. Ct. 1392, 99 L. Ed. 2d 645 (1988) (quoting Hooper v. California, 155 U.S. 648, 657, 15 S. Ct. 207, 39 L. Ed. 297 (1895)). Though the presumption of validity for an agency's regulation is somewhat less than that afforded to an act of Congress, Motor Vehicle Manufacturers Ass'n of U.S., Inc., 463 U.S. 29, Nufarm still has the burden of overcoming a presumption that the regulation follows Congressional intent and is therefore constitutional. See Moon v. Freeman, 379 F.2d 382, 391 (9th Cir. 1967) (finding that the burden of demonstrating that a law is unconstitutional falls on the party challenging its validity).

8

**B**
**19 C.F.R. § 181.53 Does Not Facially Violate the Export Clause**

Plaintiff claims that 19 C.F.R. § 181.53 is unconstitutional on its face. Plaintiff's Motion at 6. Defendant responds that, when looking at the regulation's language in its full context and alongside the relevant NAFTA and HTSUS provisions, the regulation is within constitutional constraints because the duty in question is explicitly intended to be assessed on the goods as imported, not in relation to their status as exports. Defendant's Memo at 14-15; see North American Free Trade Agreement, U.S.-Can.-Mex, December 17, 1992, 32 I.L.M. 289 (1993).

NAFTA provides a system of trade preference for its member countries. Article 303[10] seeks to avoid the abuse of trade preferences in the form of duty deferral by requiring that duties be paid on non-NAFTA components of goods exported to NAFTA countries, thus guarding against the establishment of "export platforms," or importing goods solely for the purpose of later exporting them in order to avoid duties that would have otherwise been assessed. Customs implements Article 303 in 19 C.F.R. § 181.53, which reads, in pertinent part:

---

[10] NAFTA Article 303(3) states:

Where a good is imported into the territory of a Party pursuant to a duty deferral program and is subsequently exported to the territory of another Party, or is used as a material in the production of another good that is subsequently exported to the territory of another Party, or is substituted by an identical or similar good used as a material in the production of another good that is subsequently exported to the territory of another Party, the Party from whose territory the good is exported:
    a) shall assess the customs duties as if the exported good had been withdrawn for domestic consumption; and
    b) may waive or reduce such customs duties to the extent permitted under paragraph 1.

NAFTA art. 303(3), 32 I.L.M. at 683, implemented by the North American Free Trade Agreement Implementation Act, Pub. L. 103-182, 107 stat. 2057 (1993).

9

Except in the case of a good imported from Canada or Mexico for repair or alteration, where a good, regardless of its origin, was imported temporarily free of duty for repair, alteration or processing (subheading 9813.00.05, Harmonized Tariff Schedule of the United States) and is subsequently exported to Canada or Mexico, duty shall be assessed on the good on the basis of its condition at the time of its importation into the United States. Such duty shall be paid no later than 60 calendar days after either the date of exportation or the date of entry into a duty-deferral program of Canada or Mexico, except that, upon filing of a proper claim under paragraph (a)(3) of this section, the duty shall be waived or reduced in an amount that does not exceed the lesser of the total amount of duty payable on the good under this section or the total amount of customs duties paid to Canada or Mexico.

19 C.F.R. § 181.53(b)(5).  The regulation thus specifically provides for a duty that is to be deferred and then later  "assessed on the good <u>on the basis of its condition at the time of its importation</u> into the United States." <u>Id.</u> (emphasis added).

Plaintiff misinterprets the language of 19 C.F.R. § 181.53 in its Motion.[11]  The regulation's language presents a clear implementation of a duty deferral process, tracking the stated intent of NAFTA Article 303.   The language in the challenged regulation clearly requires that the duties in question are to apply to the goods as a result of their status as imports, not as exports.  Thus, 19 C.F.R. § 181.53 is not unconstitutional on its face.

### C
### 19 C.F.R. § 181.53 is Constitutional in Effect

Plaintiff also argues that the regulation is unconstitutional in operation, claiming that duties are imposed under the regulation not because of the fact that the goods were imported to

---

[11] For example, Plaintiff uses the following excerpt from 19 C.F.R. § 181.53: "[W]here a <u>good</u> . . . was imported temporarily free of duty for repair, alteration or processing . . . and <u>is subsequently exported</u> to Canada or Mexico, <u>duty shall be assessed on the good</u> . . . ." Plaintiff's Motion at 6.  The complete sentence provides that the duty is assessed on the basis of the condition of the good at the time of its import.

10

the United States or because of their alteration, repair, or processing, but rather because the goods were exported specifically to a NAFTA country. Plaintiff's Motion at 9.  Thus, according to Nufarm, for all other imports the obligation to pay duty is avoided by exporting to a non-NAFTA country and arises by failing to export, and this discrepancy amounts to a violation of the Export Clause. Id.  Defendant responds that the entire policy and structure of the regulation involves the calculation of previously imposed but temporarily deferred duties, emphasizing that they are import, not export, duties. Defendant's Memo at 15.  The Government further notes the distinction between taxes and duties imposed on goods at the time of exportation versus those assessed at the time of exportation but imposed at an earlier time. Id.  Because the duties in question were not imposed but assessed at the time of export, Defendant argues, the regulation is constitutional in operation. Id.

The constitutional prohibition of duties on exports "does not mean that articles exported are relieved from the prior ordinary burdens of taxation which rest upon all property similarly situated.  The exemption attaches to the export and not to the article before its exportation." Cornell v. Coyne, 192 U.S. 418, 427, 24 S. Ct. 383, 48 L. Ed. 504 (1904) (emphasis added); see A.G. Spalding & Bros. v. Edward, 262 U.S. 66, 43 S. Ct. 485, 67 L. Ed. 865 (1923) (holding that when a taxed sale occurs in the export process the tax is unconstitutional); Consolidation Coal Co. v. United States, 64 Fed. Cl. 718, 724 (Ct. Fed. Cl. 2005) ("Both sides agree that the fee would be constitutional if imposed solely on extraction, which would be the equivalent of the manufacturing stage in Cornell.  On the other hand, given defendant's concession that the sale occurs in the export process, the fee, if held to be a tax, would be unconstitutional pursuant to A.G. Spalding if imposed at the time the coal is sold." (citation omitted)).  In Pace v. Burgess, 92

11

U.S. 372, 23 L. Ed. 657 (1876), the Supreme Court discussed the export exemption in the context

of a stamp tax placed on tobacco bound for export, stating:

> The plaintiff contends that the charge for the stamps required to be placed on packages of manufactured tobacco intended for exportation was and is a duty on exports . . . . But it is manifest that such was not its character or object. The stamp was intended for no other purpose than to separate and identify the tobacco which the manufacturer desired to export, and thereby, instead of taxing it, to relieve it from the taxation to which other tobacco was subjected. It was a means devised to prevent fraud, and secure the faithful carrying out of the declared intent with regard to the tobacco so marked. The payment of twenty-five cents or of ten cents for the stamp used was no more a tax on the export than was the fee for clearing the vessel in which it was transported, or for making out and certifying the manifest of the cargo. <u>It bore no proportion whatever to the quantity or value of the package on which it was affixed</u>.[12]

<u>Id.</u> at 374-75 (emphasis added). Clearly there is a distinction between charges imposed for

reasons independent of the export process and those in place due to an item's export.

The duty set forth by 19 C.F.R. § 181.53 is in place due to the goods' import into the

United States, not their export. Plaintiff mistakes the distinction in its argument by looking to

the fact that goods exported to non-NAFTA countries are treated differently than goods exported

to NAFTA countries, rather than pinpointing the time at which the duty was imposed in order to

---

[12] Plaintiff asserted during oral argument that upholding the regulation as it is written would be doing something no court has ever done in the application of the Export Clause. The courts have clearly established that the proper construction of the Export Clause is that no tax or duty can be cast upon the process of exporting goods. However, the regulation in question places no such duty on export. Rather the duty is imposed on the goods <u>before</u> their export, as was distinguished in <u>Cornell</u> and <u>Consolidation Coal</u>. <u>Cornell</u>, 192 U.S. 418; <u>Consolidation Coal</u>, 64 Fed. Cl. at 724 (citing <u>Pace</u>, 92 U.S. 372; <u>Turpin</u>, 117 U.S. at 507). Thus, the assessments made in <u>Pace</u> when the Court upheld the charges on items to be exported as well as those made in <u>Consolidation Coal</u>, <u>Cornell</u>, <u>Turpin</u>, and others are directly applicable here. Though in later cases such as <u>U.S. Shoe Corp.</u>, 523 U.S. at 369, and <u>Moon</u>, 379 F.2d at 389-90, courts focused on the distinction between a tax or duty and a regulation when applying <u>Pace</u>, the analysis quoted in the text above arrives at the conclusion of constitutionality using a reasoning similar to that used here and is equally applicable in light of the guidelines provided by <u>Cornell</u> and <u>Consolidation Coal</u>.

determine whether all items are similarly situated. See Plaintiff's Motion at 9. The issue is first whether the duty is placed on all imports alike. In such a circumstance, the deferral of duties is a temporary option for importers, providing for the assessment of the duty at a later time, which in this case coincides with the export of the goods. Ultimately, every importer meeting the 19 C.F.R. § 181.53 standard has the same option of paying the duty immediately or deferring payment to a later date.[13] The fact that events occurring subsequent to importation could result in the waiver or reduction of the duty is irrelevant to the analysis of whether all goods are similarly situated regarding its implementation.

As in Pace, the duty at issue here is not a tax on goods being exported. Rather, 19 C.F.R. § 181.53 implements the guidelines provided by NAFTA Article 303 and U.S. Note 1(c) regarding import duty deferral. Much like the measure in Pace, the purpose behind these duty deferral provisions is in part to prevent abuse, this time by discouraging the use of the United States as an "export platform." The regulation in question clearly meets constitutional standards by imposing duties on imports, allowing for temporary duty deferral, and then assessing duties at the time of export. See Ammex, Inc. v. United States, 341 F. Supp. 2d 1308 (CIT 2004), aff'd, 419 F.3d 1342 (Fed. Cir. 2005) (distinguishing "assessment," meaning fixing of specific amounts of liability, from "imposition," meaning the responsibility to pay a particular duty, and finding that assessment of duty upon export is within constitutional constraints). As the constitutional focus is on the imposition of duties and not their assessment, the duty deferral process set forth in 19 C.F.R. § 181.53 escapes Export Clause duty exemption. Plaintiff therefore fails to meet its

---

[13] Defendant declined to argue that the choice to use 19 C.F.R. § 181.53 to defer duty until export constitutes a waiver of a known right.

burden; because the regulation operates as an import duty and not a duty on exports, 19 C.F.R. §

181.53 is constitutional in effect.


**V**
**CONCLUSION**

For the reasons stated above, Nufarm's Motion for Summary Judgment is denied and the

Government's Cross-Motion for Summary Judgment is granted.


\_\_\_\_/s/ Evan J. Wallach_____
Evan J. Wallach, Judge

Dated: February 15, 2007
New York, New York

14

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

                                              :
NUFARM AMERICA'S, INC.,                        :
                                              :
                          Plaintiff,           :
                                              :
               v.                              :          Before: Wallach, Judge
                                              :          Court No.: 02-00162
UNITED STATES,                                 :
                                              :
                          Defendant.           :
                                              :
_____       :


                              JUDGMENT ORDER


        This case having come before the court upon the Motion for Summary Judgment filed by
Plaintiff Nufarm America's, Inc. ("Plaintiff's Motion"), and the Cross Motion for Summary
Judgment filed by Defendant United States Government ("Defendant's Motion"); the court
having reviewed all papers and pleadings on file herein, having heard oral argument by each
party, and after due deliberation, having reached a decision herein; now, in conformity with said
decision, it is hereby

        ORDERED ADJUDGED AND DECREED that Plaintiff's Motion is DENIED, and it is
further

        ORDERED ADJUDGED AND DECREED that Defendant's Motion is GRANTED.




                                  _____/s/ Evan J. Wallach_____
                                        Evan J. Wallach, Judge


Dated: February 15, 2007
        New York, New York